**Sharon Jean HANSEN, Appellant (Plaintiff Below),**

v.

**VON DUPRIN, INC., Appellee (Defendant Below).**

No. 2–985A275.

Court of Appeals of Indiana, Fourth District.

Sept. 9, 1986.

Rehearing Denied Nov. 6, 1986.

Eugene C. Hollander, Indianapolis, for appellant.

Richard W. Guthrie, Stewart, Irwin, Gilliom, Meyer & Guthrie, Indianapolis, for appellee.

YOUNG, Judge.

Sharon Jean Hansen applied to the Industrial Board seeking compensation for total temporary disability resulting from a nervous disorder that occurred during her employment with Von Duprin, Inc. Her application was denied. She now appeals and raises the issue of whether a mental disorder resulting from harassment by an employer is a compensable injury under Indiana's Workmen's Compensation Act.

Hansen was employed by the Von Duprin Company for several years. During that time she suffered numerous emotional and physical problems, including a gunshot wound inflicted by her former husband in 1972. Although she took several leaves of absence from work, she maintained her job and received several promotions. She had no problems at her employment until 1979, when she began to experience difficulties with her immediate supervisor, Jim Hale. Aware of Hansen's fear of guns following the 1972 shooting, Hale would often approach Hansen from behind and jab her in the ribs as if holding a gun. He would also startle her by intentionally dropping books behind her as she was working and by occasionally firing a cap gun. Hansen became increasingly nervous and agitated by his actions. She complained to a friend in management about his behavior, but apparently made no formal complaint; no action was ever taken against Hale. On October 23, 1979, Hale made a comment which Hansen cannot recall, which caused her to become hysterical. She left work and immediately saw her doctor who diagnosed her condition as severe anxiety and depressive syndrome. She remains unable to work and on February 20, 1981 sought benefits for temporary total disability by filing Form 9 with the Industrial Board.

After a hearing before a single member of the Board, Hansen was found to be temporarily totally disabled and was awarded benefits. The full Board overturned the award on review, finding that Hansen's life experiences had contributed to her condition and that although Hale's acts were intentional and caused her condition to be such that she could not cope with the ordinary stresses of her employment, Hansen's disability was not an injury by accident as defined under the Workmen's Compensation Act.

In reviewing a negative award by the Industrial Board, we do not reweigh the evidence or substitute our decision for that of the Board. We will overturn the Board's decision only when there is substantial undisputed evidence compelling a contrary result. *Donahue v. Youngstown Sheet & Tube Company* (1985), Ind., 474 N.E.2d 1013.

■ IND.CODE 22–3–2–2 provides that compensation shall be paid for "personal injury or death by accident arising out of and in the course of the employment." Our supreme court has recently clarified the statutory requirement of injury by accident. In *Evans v. Yankeetown Dock Corporation* (1986), Ind., 491 N.E.2d 969, the court held that the phrase "by accident" refers to an unexpected injury on a particular occasion rather than an unexpected event. Hale's actions towards Hansen were intended either as a joke or to upset her, but were certainly not intended to cause a nervous disorder. *See e.g. American Maize Products Co. v. Nichiporchik* (1940), 108 Ind.App. 502, 29 N.E.2d 801 (an injury may be result of accidental means although act involving accident was intentional). Hansen's resulting anxiety neurosis was an unexpected injury and, therefore, fits within the definition of injury by accident.

Our next inquiry is to ascertain whether the Workmen's Compensation Act covers

purely mental injuries.[1] Most jurisdictions, including Indiana, hold that the full disability, including the effects of neurosis, is compensable when there has been a physical accident and the claimant's disability is increased or prolonged by neurosis. Larson, *Mental and Nervous Injury in Workmen's Compensation,* 23 Vand.L.R. 1243, 1249. In his above-cited article, Larson notes the fallacy of requiring a physical injury to accompany a mental injury in order to be compensable:

> Perhaps in earlier years, when much less was known about mental and nervous injuries and their relation to 'physical' symptoms and behavior, there was an excuse, on grounds of evidentiary difficulties, for ruling out recoveries based on such injuries, both in tort and in workmen's compensation. But the excuse no longer exists. Consequently, a state that would withhold the benefits of workmen's compensation from a man who, before an obvious industrial mishap, was a competent, respected iron-worker, and after the mishap was totally incapacitated to do the only job for which he was trained, would nowadays be doing unjustifiable violence to the intent of the workmen's compensation act, for reasons that are without support in either legal or medical theory.

*Id.* at 1253.

We also see no valid reason for requiring a physical injury, however slight, to justify an award for a work-related nervous disorder. The Workmen's Compensation Act provides compensation for "personal injury or death" arising out of employment. IC 22–3–2–2. The Act does not exclude mental illness and Indiana has long allowed awards for neurosis accompanying physical injuries. *See E.I. du Pont de Nemours & Company v. Green* (1945), 116 Ind.App. 283, 63 N.E.2d 547. Moreover, the Act is not based upon fault or negligence as is tort law, but seeks to avoid litigation between employers and employees by making workmen's compensation the sole remedy for work-related injuries. Accordingly, compensation is awarded to an employee regardless of fault, and the employer's liability is likewise limited to the amounts set by the Act.

■ The Workmen's Compensation Act is remedial in nature and does not specifically exclude mental injuries from its coverage. We therefore hold that a mental disorder need not be accompanied by a physical injury to be compensable under the Workmen's Compensation Act.

■ Our holding does not do away with the Act's requirement that the injury arise out of and in the course of employment. To be compensable, a causal connection between the employment and the resulting injury must be shown. *Donahue v. Youngstown Sheet & Tube Co., supra.* Establishing such a causal connection is difficult in claims alleging a mental injury. As one commentator has noted:

> [r]arely does a mental illness result from a single cause. More often than not it results from many causes, including basic defects in the employee's personality, and hence, it is arguable that mental illness is an ailment common to all mankind irrespective of the employer-employee relationship.

Render, *Mental Illness as an Industrial Accident,* 31 Tenn.L.R. 288, 297 (1964).

A similar difficulty exists in workmen's compensation cases involving heart attacks. Indiana courts have held that in order for a heart attack to be considered a work-related injury, it must be shown that:

> the employment, or the conditions of the employment, must have been, in some proximate way, accountable for, condu-

---

**1.** One commentator has noted there are three kinds of worker's compensation cases involving mental illness: 1) physical trauma which produces a mental disorder; 2) mental stimulus which produces a physical disability; and 3) mental stimulus which produces a mental disorder. Render, *Mental Illness as an Industrial Accident,* 31 Tenn.L.R. 288 (1964). While the majority of states find the first two types of disorders to be compensable as work-related injuries, there is disagreement over the compensability of the third type. Id. We are presented with the third type of disorder in this case.

cive to, or in aggravation of or the hastening of, the failing activity of the heart.

*Douglas v. Warner Gear Division of Borg Warner Corp.* (1961), 131 Ind.App. 664, 174 N.E.2d 584, 588; *see also Harris v. Rainsoft of Allen County, Inc.* (1981), Ind.App., 416 N.E.2d 1320. In other words, the claimant must demonstrate that the heart attack was precipitated by some unusual stress related to his employment.

Courts in other jurisdictions, notably Wisconsin and Maine, have adopted a similar standard for evaluating claims of mental injury in worker's compensation cases. In order to receive compensation for a mental disorder in those states, the claimant must establish that the disorder resulted from a situation of greater dimensions than the day-to-day mental stresses and tensions that all employees must experience. *School District #1 v. Department of Industry, Labor & Human Relations* (1974), 62 Wis.2d 370, 215 N.W.2d 373; *Townsend v. Maine Bureau of Public Safety* (Me. 1979), 404 A.2d 1014.

■ We believe the above approach is a sensible standard for evaluating work-related mental injuries. We, therefore, adopt the rule that a mental disorder is compensable under our Workmen's Compensation Act only if the disorder resulted from stress other than the day-to-day mental stresses which all employees experience.

■ We do not believe the facts in this case present a situation of unusual stress. Certainly, Hale's behavior toward Hansen was ill-considered and inappropriate for one in a supervisory position. Nevertheless, the dimensions of his antics were not so great or so pervasive as to cause abnormal anxiety in an employee. It is a fact of life that friction often develops between an employee and his supervisor. If that friction escalates to the point of full-fledged harrassment by the supervisor, then it might contribute to a mental injury to the employee. For example, in the Arizona case of *Pima Community College v. Industrial Commission of Arizona* (Ct.App.1983), 137 Ariz. 137, 669 P.2d 115, the court affirmed

an award for benefits for chronic heartburn caused by work-related stress. In that case there was evidence that the claimant was placed under unusual stress at work by the fact that his supervisor swore and threw things at him, and consistently gave him the worst job assignments.

The horseplay evidence in Hansen's case, while unfortunate due to her sensitivity, was not the type of harrassment which should have engendered severe anxiety in an employee. Although Hale's conduct did not help Hansen's emotional state, we cannot hold that his actions caused her present anxiety disorder.

The Board's decision is affirmed.

CONOVER, P.J., and MILLER, J., concur.